IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23-1481 |
| Plaintiff, | ) | District Court Case No. |
| | ) | 2:21-cv-12570 |
| v. | ) | |
| | ) | |
| JAMES J. KELLY, JR., | ) | |
| Defendant. | ) | |

_____///

## **DEFENDANT'S BRIEF ON APPEAL**

## **ORAL ARGUMENT REQUESTED**

## <u>Disclosure of Corporate Affiliations and Financial Interest</u>

See Attached.

## Table of Contents

Disclosure of Corporate Affiliations and Financial Interest................i

Table of Authorities …………………..…………………………………iii

Statement in Support of Oral Argument…………………………………v

Statement of Jurisdiction…………………………………………………vi

Statement of Issues…………………………………….………………vii

Statement of the Case …………………………………………………1

Summary of the Argument …………………………………………9

Argument …………………………………………….……………..10

Conclusion …………………………………………………………..19

## Table of Authorities

**A.** **Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56 ...........................................................10,11

**B.** **Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91

      L.Ed.2d 202 (1986)...................................................12

Kimble v. United States, 991 F.3d 1238, 1241 (Fed. Cir. 2021)..............17

Kocsis v. Multi-Care Mgt., Inc., 97 F.3d 876, 882 (6th Cir.1996)............12

Moore v. Lafayette Life Insurance Co., 458 F.3d 416, 431-432 v

      (6th Cir. 2006)......................................................12

Redmond v. Jackson, 295 F. Supp. 2d 767 (E. D. Mich. 2002) ...............11-12

Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir.2000) ........................11

United States v. Bohanec, 263 F. Supp. 3d 881 (C.D. Cal. 2016) ............12-13

United States v. Bussell, No. CV 15-02034-SJO, 2015 WL 9957826 at *5 (C.D.

      Cal. Dec. 8, 2015) .....................................................13

United States v. Collins, Case No. 21-1935 (3rd Cir., June 6, 2022)...............18

United States v. McBride, 908 F.Supp.2d 1186, 1204, 1209 (D. Utah 2012).13

United States v. Ott, 441 F. Supp.3d 521 (E.D. Mich. 2020)...................17

United States v Williams, 489 Fed. Appx. 655 (4th Cir. 2012) ................13

United States Securities and Exchange Commission v. Sierra Brokerage Services,

Inc., 712 F.3rd 321, 32__ (6th Cir. 2013).........................................11

## Statement in Support of Oral Argument

Defendant-Appellant Kelly respectfully requests that this Court grant oral argument pursuant to Federal Rule of Appellate Procedure 34 and Sixth Circuit Local Rule 34.  Defendant believes that the court will benefit from oral argument in this case as the case involves matters of tax penalties for which relatively few litigated cases have been reported.  In addition, the district court decided cross-motions for summary judgment without oral argument and Defendant respectfully submits that approach contributed to error.

## **Statement of Jurisdiction**

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties. The Court entered judgment against Defendant on May 2, 2023. The Court of Appeals has jurisdiction over the instant appeal pursuant to 28 U.S.C. §1291.

## Statement of Issue(s)

Whether the undisputed material facts in the record established that

Defendant did not <u>willfully</u> fail to file requisite tax forms (FBARs)

applicable to taxpayers with overseas accounts for the 2013, 2014, and 2015

tax years, and therefore provided grounds for entry of summary judgment in

Defendant's favor, as opposed to in favor of Plaintiff, as to the amount of

civil penalty (or other monies) which the Plaintiff may recover for those tax

years.

Defendant respectfully answers:        Yes.

Whether the District Court committed reversible error by finding for the

Plaintiff as to willfulness where Defendant entered into the Internal Revenue

Service's Offshore Voluntary Disclosure Program ("OVDP") within months

of being advised by his bank that he had a reporting requirement, and then

was later discharged from that program by the Plaintiff government.

Defendant respectfully answers:        Yes.

## Statement of the Case

### A.   Factual Background

Defendant deposited money in an overseas account in or about 2008. The money was first deposited with Finter Bank in Switzerland, and then transferred to Bank Alpinum in Lichtenstein. Defendant's account was moved from the bank in Switzerland to the bank in Lichtenstein for reasons unrelated to this dispute. (See Kelly Affidavit, RE No. 47-1, Page ID # 3-6.)

The Internal Revenue Service ("IRS") requires taxpayers to report the existence of deposit accounts overseas to the extent the deposit(s) exceeds $10,000. The reporting form is called an "FBAR," which stands for "Report of Foreign Bank and Financial Accounts." (See Sample FBAR, RE No. 47-1, Page ID # 8-12.) It is undisputed that Defendant failed to timely file FBAR forms for the 2013, 2014, and 2015 tax years. (See Kelly Affidavit, RE No. 47-1, Page ID # 3-6.)

This case turns upon one central question – whether the Defendant's failure to timely file the FBAR forms for the 2013, 2104, and 2015 tax years, was willful or not willful. In the event the failure to file was not willful, as Defendant contends, the IRS may collect penalties of only $10,000 per year per overseas account. If, on the other hand, the failure to file the FBARs was "willful," the Plaintiff government may assess a penalty of up to 50% of the account value.

That outcome of that single question controls whether the Defendant's failure to timely file in this instance results in a $30,000 total penalty ($10,000 per year for the three (3) tax years in dispute) or a penalty in excess of $750,000 (50% of the highest account balance during the period in question plus fees and other incidentals).

As noted, the Defendant does not dispute that he failed to timely file FBARs for the years in dispute.  **<u>However, he respectfully submits that there was no willfulness underlying that failure, and the undisputed facts in the record established that point such that Defendant should have been entitled to entry of summary judgment in his favor on the absence of willfulness</u>**.

Defendant is a former anesthesiologist.  Defendant lost his medical license based upon a criminal conviction for which he served time in prison.  The Defendant also has had a divorce.  Defendant does not dispute those facts alleged by the Plaintiff (other than they are or should be irrelevant to the question of his FBAR compliance.)

<u>In 2014, within months of learning of the FBAR reporting requirement, Defendant requested entry into the IRS's Offshore Voluntary Disclosure Program ("OVDP") for taxpayers with overseas accounts in 2014</u>.  (See Correspondence,

RE No. 47-1, Page ID # 14-17.)  That request occurred when Defendant first
learned from his Swiss bank that he needed to file FBAR forms.  Defendant's
request occurred prior to the June 30, 2014 due date for submission of the 2013
FBAR.  2013 is the first of the three (3) years at issue in this case.

The purpose of the OVDP is to provide "U.S. taxpayers with undisclosed
income from offshore assets a compliance avenue to resolve income tax liabilities,
various tax information reporting obligations relating to foreign financial assets,
and FBAR reporting requirements…." (See IRS Literature, RE No. 47-1, Page ID
# 20.)  The record showed that Defendant clearly did not hide the existence of the
account or the amount of money he held therein.  Rather, he intended to comply
and disclose on a timely basis through entry into the IRS's own OVDP.

Defendant was part of the OVDP until 2018.  (See Activity Record, RE No.
47-1, Page ID # 22-25.)

Additionally, Defendant also hired a Swiss account manager.  He did so to
maximize his return on invested or deposited funds without assuming substantial
risk.  The Swiss manager helped relocate the funds to the Lichtenstein bank.  (See
Kelly Affidavit, RE No. 471-, Page ID # 5-6.)

<u>3</u>

Defendant ordered annual reports from Bank Alpinum containing the information required by the FBAR forms, namely identity of the bank, account number, and deposit amount. The annual reports represent that bank's method of providing FBAR information. Defendant understood that the bank generated annual reports, which he ordered and paid for, and that the reports were provided to the IRS. Indeed, Defendant testified at his deposition that this had in fact occurred. (See Kelly Affidavit, RE No. 47-1, Page ID # 5-6.)

Defendant learned after his deposition that the reports were prepared but not filed by the Swiss account manager and/or the bank in Lichtenstein. Rather, the reports had been prepared and stored for later submission if requested by the IRS. However, that does not change the fact that the Defendant – the taxpayer in this case – reasonably believed and understood that the information had been provided as required. (See Kelly Affidavit, RE No. 47-1, Page ID # 5-6.)

## B.    **Procedural Background**

The Complaint in this case was filed on or about November 1, 2021. Defendant answered on November 27, 2021, denying as untrue Plaintiff's allegation that Defendant's failure to timely file FBAR forms for the 2013-2015 tax years was "willful". (See Answer, RE No. 20.)

<u>4</u>

After a discovery period, the parties filed cross motions for summary judgment on or about November 22, 2022. (See Motions and Supporting Materials, Re Nos. 47, 48.)

On May 2, 2023, after briefing, the district court entered summary judgment in favor of the Plaintiff and against the Defendant. (See Opinion and Judgment, RE Nos. 60, 61.)

The notice of appeal relative to this matter was timely filed on May 30, 2023. (See Notice of Appeal, RE No. 64.)

## C.   The District Court's Opinion

As noted, the district court found that Defendant's failure to timely file the requisite tax forms was willful. Factual determinations underlying that decision are set forth in the district court's summary judgment opinion, and include the following:

> In early 2008, Defendant Kelly liquidated funds from and closed his domestic bank accounts. Shortly thereafter, in February 2008, Defendant Kelly travelled to Zurich, Switzerland and opened an account at Finter Bank, with an account number ending in 3019, ("Finter Account"), where he deposited $1,854,463. The funds deposited were the earnings from his anesthesiology practice. Defendant Kelly was the sole account signatory and beneficial owner of his Finter Account. Defendant Kelly designated his Finter Account as a numbered account that would not bear his name on statements generated from the account. Defendant Kelly also requested that Finter Bank retain all account related correspondence rather than have it sent to him at a designated address.

<u>5</u>

Despite admitting to having a "limited knowledge of banking," Defendant Kelly never sought any professional advice from an accountant, tax attorney or advisor regarding the potential tax implications or reporting obligations of his Finter Account because he "didn't see a need" and he "had no questions about it."

By letter dated December 23, 2013, Finter Bank notified Defendant Kelly of its intention to disclose his Finter Account to U.S. authorities through the Swiss Bank Program. Defendant Kelly admitted that he received the letter on or about that date. Finter Bank requested that Defendant Kelly submit proof of his compliance with U.S. tax laws, including copies of "FBAR" forms for all years during which his Finter Account was open, and suggested that he confirm the "timely filing of such FBAR forms." In the same letter, Finter Bank also "strongly urge[d]" Defendant Kelly to "promptly contact a qualified U.S. tax specialist in order to: determine any applicable U.S. tax consequences in connection with [his] Finter Account(s), including any potential additional U.S. tax filing or other.

Finter Bank also advised Defendant Kelly by that same letter and by phone that, if he had not previously reported his Finter Account to the IRS, he should consider participating in the Department of the Treasury's Offshore Voluntary Disclosure Program ("OVDP"). Finter Bank subsequently disclosed Defendant Kelly's Finter Account to the United States Department of Justice through the Swiss Bank Program. In April 2014, Defendant Kelly, through his Attorney Charles Haas, submitted a letter requesting preclearance and participation into the 2014 OVDP for years 2008 through 2013. On January 8, 2015, the IRS faxed Defendant Kelly's representative to inform him that Defendant Kelly was cleared to make a voluntary disclosure. Exhibit L, IRS Disclosure Fax, USA 485. As set forth in the OVDP Frequently Asked Questions and Answers for 2014:

[p]reclearance does not guarantee a taxpayer acceptance into the OVDP." Taxpayers pre-cleared for OVDP must follow the steps outlined below (FAQ 24) within 45 days from receipt of the fax notification to make an offshore voluntary disclosure. Taxpayers must truthfully, timely, and completely comply with all provisions of the OVDP.

In April 2015, the IRS notified Defendant Kelly through his representative that he was preliminarily accepted into OVDP and advised that Defendant   Kelly's acceptance would depend upon whether his disclosure is truthful and complete, and whether he cooperates with the IRS in determining the correct tax liability and makes good faith arrangements with the IRS to pay in full the tax, interest, and penalties determined by the IRS to be applicable. In December 2016, as part of his OVDP submission,  Defendant Kelly filed delinquent FBARs for 2008 through 2013. On his delinquent 2013 FBAR, Defendant Kelly reported that his Finter Account held a maximum account value of $1,538,251 for 2013. Defendant Kelly did not file FBARs for 2014 and 2015, and did not ask any professional advisors to prepare FBARs for these years, as reflected by his deposition testimony.

Meanwhile, in September 2015, Defendant Kelly's Finter Account was closed. At the time, the balance of Defendant Kelly's Finter Account was approximately $1.5 million. While the Finter Account was open, Defendant Kelly testified that he made just one withdrawal in the amount of $310,000. In December 2015, Defendant Kelly engaged the services of Emmanuel Agustoni, of Switzerland, to transfer his Finter Account funds to a new account, ending in 1392, located at Bank Alpinum AG, in Liechtenstein. Defendant Kelly testified that he engaged the services of Mr. Agustoni, an expert in "financial investments," to manage and invest his funds after his Finter Account was closed. Defendant Kelly is the sole beneficial owner of the Bank Alpinum Account.

(District Court opinion, RE No. 60, Page ID # 3-9, citations in original.)

The district court largely confirms that the Defendant acted to remedy the oversight on the FBARs as soon as he received correspondence from Finter Bank notifying him of his obligation. The district court appears to have then rejected that conclusion based upon less conclusive facts purportedly weighing in favor of recklessness. (District Court opinion, citations in original.)

The district court stated in pertinent part as follows:

> These undisputable facts leave no doubt that Defendant Kelly acted with actual knowledge of the FBAR reporting requirement when he violated his statutory duty to timely report his Finter Account. Defendant Kelly's actual knowledge of the FBAR reporting requirement coupled with his pattern of deceitful conduct demonstrates that his failure to timely file his 2013 FBAR, and his failure to file the 2014 and 2015 FBARs at all was knowing and intentional, and thus willful.

> However, even if the Court concluded that Defendant Kelly did not commit a knowing violation of the FBAR reporting requirement, these same facts—the bulk of which come from Defendant Kelly's own admissions—demonstrate that he acted recklessly, and thus willfully, in failing to satisfy his FBAR reporting requirements for 2013, 2014, and 2015.

> After receiving the express warning from Finter Bank detailed above, Defendant Kelly still did not reach out to any accountant, advisor, or other tax professional, or otherwise inquire about his federal reporting obligation. Nor did Defendant Kelly otherwise take any steps to determine what U.S. reporting or filing requirements applied to his Finter Account. This conduct alone demonstrates willful blindness and a reckless disregard for his potential reporting requirements.

The district court appeared to find the entry into the OVDP. And while Defendant does not dispute that the OVDP does not serve as a substitute for compliance, it does weigh heavily in favor of the Defendant's assertion that he acted promptly when he learned of the reporting requirement, and attempted to remedy his oversight through a program designed precisely for that purpose.

## Summary of the Argument

The record reflects, and the district court found and noted, that Plaintiff first learned of the FBAR requirement in or about December 2013, via correspondence from his Swiss bank at the time, Finter Bank; Defendant promptly sought entry into the OVDP approximately 4 months after receipt of the Finter Bank letter, on April 25, 2014; Defendant remained in the OVDP until sometime in 2018; and Defendant filed his previously omitted FBARs while participating in the OVDP.

The IRS's activity record for 2017-2018 contains numerous entries, all of which underscore the Defendant's attempts, and ongoing dialogue with the Plaintiff at the time, to clean up the prior failure to file the FBAR forms. (See Activity Record, RE 47-1, Page ID # 22-25.)

The documents tell the tale in this regard – Defendant was not seeking to hide or conceal anything – he was trying to disclose through the IRS's own program designed for exactly that purpose. That weighs heavily against, if not conclusively establishes, the absence of intentional non-disclosure or reckless non-disclosure, the measures for willful.

Plaintiff repeatedly argued, and the district court noted, that the OVDP does not (and did not) excuse the Defendant's failure to timely file his FBARs. That point may be true, but the Defendant does not rely on the OVDP to excuse the failure to file. Instead, <u>Defendant contends that the participation in the OVDP demonstrates his good faith attempt to address and remedy his oversight</u>. That fact weighs heavily in favor of a finding that the failure to file was not willful.

## Argument

### A.   Standard of Review and the Summary Judgment Standard.

#### 1. Standard of review by the Court of Appeals

This Court reviews <u>de novo</u> the district court's entry of summary judgment:

> This court reviews de novo an order granting summary judgment. A court must grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In making this determination, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." The ultimate inquiry is "whether the evidence presents a

**10**

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." "[T]he substantive law will identify which facts are material," and "summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Finally, the standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.

United States Securities and Exchange Commission v. Sierra Brokerage Services, Inc., 712 F.3rd 321, 326-27 (6th Cir. 2013)(quotations in original)(citations omitted).

De novo review means an appellate or other reviewing court decides an appeal without any deference to the lower court's decision. See, e.g., District Court Opinion, RE 60, Page ID # 875.

2. **Standard of review by the district court**

The standard for entry of summary judgment is settled:

"Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir.2000) (quoting Fed.R.Civ.P. 56(c)). To defeat a summary judgment motion, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. Id."

Redmond v. Jackson, 295 F. Supp. 2d 767, 769-770 (E. D. Mich. 2002)(citations and quotations in original).

> "Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to a judgment as a matter of law. Kocsis v. Multi-Care Mgt., Inc., 97 F.3d 876, 882 (6th Cir.1996). This Court's 'inquiry, therefore, unavoidably asks whether reasonable [fact-finders] could find by a preponderance of evidence that the plaintiff is entitled to a [judgment].' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)."

Moore v. Lafayette Life Insurance Co., 458 F.3d 416, 431-432 (6ᵗʰ Cir. 2006)(citations and quotations in original).

Here, Defendant respectfully submits that the undisputed facts surrounding Defendant's failure to timely file FBAR forms for the years in dispute establish the absence of willfullness.

**B.    FBARs**

The legal standard for evaluating the requested penalty in this case has been largely agreed upon by the handful of cases addressing purportedly willful noncompliance. United States v. Bohanec, 263 F. Supp. 3d 881 (C.D. Cal. 2016), summarizes as follows:

"Each year, U.S. citizens who hold a financial account in a foreign country must report certain details about the account to the Treasury Department. See 31 U.S.C. § 5314; 31 C.F.R. § 103.24 (2009). The report must be made each year by filing an FBAR with the Treasury Department no later than June 30 of the following year. See 31 C.F.R. §§ 103.27(c), (d), (e) (2009). Failure to file an FBAR can result in a fine up to $10,000. 31 U.S.C. § 5321(a)(5)(B). If a foreign account holder "willfully" failed to report the account on an FBAR, the maximum penalty is increased from $10,000 to the greater of $100,000 or fifty percent of the balance in the account at the time of violation. 31 U.S.C. §§ 5321(a)(5)(C), (D)(ii)."

Bohanec, 263 F. Supp. 3d at 888-889 (quotations and citations in original). Further,

"Where willfulness is an element of civil liability, the Supreme Court generally understands the term as covering 'not only knowing violations of a standard, but reckless ones as well.'" Safeco, 551 U.S. at 57, 127 S.Ct. 2201. "Recklessness" is an objective standard that looks to whether conduct entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Safeco, 551 U.S. at 68, 127 S. t. 2201 (internal quotation marks and citation omitted). Several other courts, citing Safeco, have held that "willfulness" under 31 U.S.C. § 5321 includes reckless disregard of a statutory duty. See United States v Williams, 489 Fed. Appx. 655, 658 (4th Cir. 2012); United States v. Bussell, No. CV 15-02034   SJO (VBKx), 2015 WL 9957826 at *5 (C.D. Cal. Dec. 8, 2015); see also United States v. McBride, 908 F.Supp.2d 1186, 1204, 1209 (D. Utah 2012)."

Bohanec, 263 F. Supp. 3d at 889-890 (quotations and citations in original).

As noted, the parties agreed that Defendant sought and obtained approval for entry into the IRS's Offshore voluntary Disclosure Program prior to the due date for submission of the 2013 FBAR. Can there possibly be willfullness through participation in the Plaintiff's own program?

**13**

After being terminated from the OVDP, moreover, Defendant ordered and paid for annual reports from his bank, which Defendant understood contained the following information required by the FBAR: the bank; the deposit account number; and the balance within the account. Additionally, Defendant understood that these annual reports had been sent to the government for each year in dispute. Defendant acted to provide the requisite information – the same information provided on an FBAR form -- to the Plaintiff on a timely basis. Again, there was therefore neither intent nor recklessness, the two approaches to a finding of willfullness.

As noted by the Plaintiff (Plaintiff's Motion for Summary Judgment, RE No. 48, Page Id. 385 & n.1), the purpose of the FBAR obligation is as follows (Defendant respectfully submits that, based upon the following he is obviously not the type of taxpayer the requirement was intended to address):

> "Section 5314 of Title 31 derives from the Bank Secrecy Act
> ("BSA"). In 1970 Congress passed the BSA, Pub. L. No. 91-508, 84
> Stat. 1114 at 12, to combat the "serious and widespread use of foreign
> financial facilities . . . for the purpose of violating American law."
> H.R. Rep. No. 91-975 (1970), reprinted in 1970 U.S.C.C.A.N. 4394,

**14**

4397. <u>The legislative history behind the Act reveals that</u>
<u>Congress was concerned about "wealthy" Americans' use of "secret</u>
<u>foreign financial facilities, particularly in Switzerland" as "a</u>
<u>convenient means of evading U.S. taxes.</u>" 1970 U.S.C.C.A.N. at
4397-9…"

The OVDP, in turn, was designed to provide:

"… U.S. taxpayers with undisclosed income from offshore assets a
<u>compliance avenue</u> to resolve income tax liabilities, <u>various tax</u>
<u>information reporting obligations relating to foreign financial assets,</u>
and FBAR reporting requirements…."

(Defendant's Response to Motion for Summary Judgment, RE No. 52, Ex. 8, Page
ID # 753-54.)

Plaintiff's own FAQ sheet on the OVDP states as follows with respect to a
taxpayer's <u>failure</u> to participate in the OVDP program:

"Q5. <u>What are some of the civil penalties that might apply</u> **<u>if I don't</u>**
**<u>participate in the OVDP</u>** <u>and the IRS examines me</u>?

<u>Depending on a taxpayer's particular facts and circumstances, the following</u>
<u>penalties could apply:</u>

**15**

- A penalty for failing to file FBARs. United States citizens, residents and
certain other persons must annually report their direct or indirect
financial interest in, or signature authority (or other authority that is
comparable to signature authority) over, a financial account that is
maintained with a financial institution located in a foreign country if, for
any calendar year, the aggregate value of all foreign financial accounts
- exceeded $10,000 at any time during the year. The civil penalty for
willfully failing to file an FBAR can be as high as the
- greater of $100,000 or 50% of the total balance of the foreign financial
account per violation. See 31 U.S.C. § 5321(a)(5). Non-willful violations
that the IRS determines were not due to reasonable cause are subject to a
$10,000 penalty per violation."

(IRS FAQ Sheet, RE No. 52, Ex. 9, Page ID # 755-757.)

**The IRS's own literature referenced above, therefore, makes clear that participation in the OVDP, the route chosen by this Defendant, steers the penalty toward the non-willful standard**.

Defendant's participation in the OVDP, the IRS's own means for compliance with "… tax information reporting obligations relating to foreign

financial assets…[,]" began within a few months of learning of his FBAR obligation and <u>before</u> the due date for the submission of the 2013 FBAR. The Plaintiff cannot credibly argue willfulness when Defendant utilized the Plaintiff's own program established to cure reporting deficiencies.

While within the program, Defendant filed FBARs.

Defendant is not aware of any case prior to this one in which the taxpayer entered into the OVDP with the intent to remedy the failure to file FBAR forms and then was terminated from the program. There are distinguishable cases in which a taxpayer withdrew from the OVDP. See e.g., <u>United States v. Ott</u>, 441 F. Supp.3d 521, 526-527 (taxpayer opted out of OVDP?OVDI); <u>Kimble v. United States,</u> 991 F.3d 1238, 1241 (Fed. Cir. 2021) (the taxpayer withdrew from the OVDP)("… [OVDP], a program designed for taxpayers exposed to potential criminal or substantial civil liability due to a willful failure to report foreign financial assets…."). But the Defendant has not located a single opinion in which the taxpayer was terminated while trying to remedy the failure to file the FBARS, as is the case here.

<u>17</u>

The Third Circuit noted the potential significance of the referenced

distinction:

> "Still worse for Collins, in June 2015 the IRS determined that since he
> withdrew from the Overseas Voluntary Disclosure Program, Collins was
> liable for civil penalties under 31 U.S.C. 5321 (a)(5) for his "willful failure"
> to report foreign accounts."

See United States v. Collins, Case No. 21-1935 (3rd Cir., June 6, 2022), at p. 2.

## C.     The Undisputed Facts in this Case Demonstrated that the Failure to File was Not Willful

Defendant requested entry into the Offshore Voluntary Disclosure Program

for taxpayers with overseas accounts in April 2014.  He only learned of the

obligation in late 2013.  Defendant did not hide the existence of the account or the

amount of money he held in the account.  Rather, he intended and sought to

disclose.

Perhaps more importantly, Defendant subsequently hired his Swiss account

manager.  Defendant ordered annual reports from Bank Alpinum containing the

information required by the FBAR forms, namely account number and deposit

amount.  This was that bank's method of providing FBAR information.  Defendant

**18**

understood that the bank generated annual reports, which he ordered and paid for, were provided to the IRS.  Indeed, Defendant testified at his deposition that this had occurred.

Defendant learned after his deposition that the reports were prepared but not filed by the Swiss account manager and the bank in Lichtenstein, but rather had been prepared and stored for later submission if requested by the IRS.  However, that does not change the fact that the Defendant – the taxpayer in this case – reasonably believed and understood that the information had been provided as required.

## Conclusion

For the reasons stated above, Defendant respectfully requests entry of summary judgment in his favor and against Plaintiff on the Plaintiff's claim for penalties in any amount exceeding $10,000.00 per year for each of 2013, 2014, and 2015.

Respectfully submitted,

Charles A. Haas (P1448
33680 Five Mile Rd.
Livonia, MI  48154, 313-282-0035
Attorney for Defendant
charlesahaas@yahoo.com

**19**

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23-1481 |
| Plaintiff, | ) | District Court Case No. |
| | ) | 2:21-cv-12570 |
| v. | ) | |
| | ) | |
| JAMES J. KELLY, JR., | ) | |
| Defendant. | ) | |

_____ ///

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for Defendant states and certifies that the

foregoing Defendant's Brief on Appeal complies with the Type-Volume Limit,

Typeface Requirements, and Type Style Requirements

Respectfully submitted,

Charles A. Haas (P14486)
33680 Five Mile Rd.
Livonia, MI  48154
313-282-0035
Attorney for Defendant
charlesahaas@yahoo.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-1481      Case Name: United States v. Kelly

Name of counsel: Charles A. Haas

Pursuant to 6th Cir. R. 26.1, James J. Kelly, Jr.
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on August 14, 2023 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ *[signature]*
Charles A. Haas
Attorney for Defendant

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23-1481 |
| Plaintiff, | ) | District Court Case No. |
| | ) | 2:21-cv-12570 |
| v. | ) | |
| | ) | |
| JAMES J. KELLY, JR., | ) | |
| Defendant. | ) | |
| | /// | |

## PROOF OF SERVICE

The undersigned attorney for Defendant states and certifies that, on this

14th day of August, 2023, he caused the foregoing Defendant's Brief on Appeal,

Disclosure of Corporate Affiliations and Financial Interest, Certificate of

Compliance, and this Proof of Service, to be served upon the counsel for Plaintiff,

United States of America, via the Court's electronic filing and service system.

Respectfully submitted,

Charles A. Haas (P14486)
33680 Five Mile Rd.
Livonia, MI  48154
313-282-0035
Attorney for Defendant
charlesahaas@yahoo.com